**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION NO. 05-10028** |
| -vs- | **JUDGE LITTLE** |
| **JOHN R. DANLEY and** | |
| **JAMES R. STACY** | **MAGISTRATE KIRK** |

## JUDGMENT

Before the court is an appeal from the magistrate's oral ruling of 8 December 2005 denying the motion to suppress filed by the defendants, John R. Danley ("Danley") and James R. Stacy ("Stacy"). The defendants appealed on 19 December 2005 [Doc. #9]. On 10 March 2006, with leave of court, the defendants filed a memorandum in support of their objection and notice of appeal [#15]. The government responded on 13 April 2006 [#18]. For the following reasons, the magistrate's decision is AFFIRMED.

## FACTUAL AND PROCEDURAL HISTORY

The testimony at the hearing before the magistrate generally established the facts as follows. On the night of 23 January 2005, after legal hunting hours, Department of Wildlife and Fisheries agents heard gun shots while near a hunting area in the vicinity of Natchez, Louisiana. While proceeding towards the area where they heard the shots, they heard even more shots. The agents then observed a pickup truck coming from the area where the shooting likely had occurred. The man driving this truck, Danley, was wearing coveralls and

a camouflage jacket. The driver accelerated to approximately 85 miles per hour. One of the agents performed a traffic stop and upon approaching the vehicle observed five freshly killed wood ducks in the truck bed in plain view. As a result of this observation and the resulting interaction with Danley, the agents proceeded to Stacy's house. Stacy stated that he had killed two of the ducks found in Danley's truck.

The defendants were charged with federal offenses under the Migratory Bird Treaty Act. 16 U.S.C. § 703, *et seq*. In Count I, Danley was charged with "tak[ing] or attempt[ing] to take in one calendar day more than the daily bag limit of ducks," a violation of 16 U.S.C. § 703 and 50 C.F.R. 20.24 [#1]. In Count II, Danley was charged with "receiv[ing] or hav[ing] in custody untagged or improperly tagged ducks belonging to another," a violation of 16 U.S.C. § 703 and 50 C.F.R. 20.37 [#1]. Stacy was charged with a single count of "put[ting] or leav[ing] untagged or improperly tagged ducks at any place or in the custody of another," a violation of 16 U.S.C. § 703 and 50 C.F.R. 20.36 [#1].

At the arraignment on 26 April 2005, both defendants entered pleas of not guilty and a trial was scheduled for 19 August 2005 [#2]. At a hearing on the original trial date, 19 August 2005, the trial was continued until 8 December 2005 [#3].

On 30 September 2005, the defendants filed a motion to suppress, arguing that

> they were the subject of an illegal stop, detention and seizure of their persons in the absence of probable cause or articulable reasons for suspicion to believe that either or both of them had violated any law and that accordingly, all evidence seized and all derivative evidence must be suppressed from use as evidence at the trial on the merits.

Defs.' Mot. Suppress ¶ 9 [#4]. The government filed an opposition to the motion on 11 October 2005 [#6]. On 8 December 2005, the defendants filed a memorandum in support of their motion [#7]. At a hearing on 8 December 2005, the magistrate issued an oral order denying the motion to suppress. Afterwards, the defendants entered conditional guilty pleas subject to the right to appeal the oral ruling denying the motion to suppress [#8]. The magistrate sentenced Danley to a fine of $350 and an assessment of $10 for Count I and a fine of $200 and an assessment of $10 for Count II. The magistrate sentenced Stacy to a fine of $200 and an assessment of $10. The payment of these fines and assessment has been suspended during the pendency of this appeal. On 11 January 2006, this court ordered that an appeal be granted to the defendants [#10].

## STANDARD OF REVIEW

Here the district court is reviewing the magistrate's decision on appeal. When the appellate court reviews a district court's decision on a motion to suppress, the court reviews questions of law *de novo* and questions of fact under a clear error standard. See United States v. Hernandez, 279 F.3d 302, 306 (5th Cir. 2002) (court of appeals reviewing district court's denial of motion to suppress using these standards). "An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial *de novo*; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." United States v. Bursey, 416 F.3d 301, 305 (4th Cir. 2005). As such, this court will review the magistrate's findings of facts for clear error and conclusions of law *de novo*.

**DISCUSSION**

The defendants argue that the evidence against them must be suppressed because the agent did not have reasonable suspicion of criminal activity. The defendants rely primarily on state law authorities discussing Louisiana state constitutional standards for search and seizure. This court finds these state law authorities irrelevant, as this case involves a search and seizure for a federal prosecution. See United States v. Eastland, 989 F.2d 760, 766 (5th Cir. 1993) ("The question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a federal offense is whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution."); Cf. United States v. Walker, 960 F.2d 409, 415-16 (5th Cir. 1992) ("We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs.").

The issue presented is whether the agent's observation of deceased wood ducks in the bed of the truck may be introduced into evidence. In approaching Danley's truck, the agent observed five deceased wood ducks in plain view in the bed of the truck. The government invokes the plain view doctrine to justify this observation and the resulting questioning. If the requirements for the plain view doctrine are met, this observation was proper and the motion to suppress will be denied.

Under the plain view doctrine, "[l]aw enforcement officers may [generally] seize anything they find in plain view without a search warrant." United States v. Munoz, 150

F.3d 401, 411 (5th Cir. 1998). To invoke this doctrine with respect to a piece of evidence, the agent must meet three requirements: 1) "[the] law enforcement officers are lawfully in a position from which they view it," 2) the item's incriminating nature is "immediately apparent," and 3) "the officers have a lawful right of access to it." Id.

The first and third inquiries are met if the officer had reasonable suspicion to stop Danley's truck. In examining whether a traffic stop was justified, "we ask whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005) (citing Terry v. Ohio, 392 U.S. 1, 19-20 (1968)).

Furthermore, "[t]he Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the totality of the circumstances of each case." Id. (internal quotation marks omitted). The Fifth Circuit has held that "reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." Id. (internal quotation marks omitted). Finally, "[i]n scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. It is also clear, however, that reasonable suspicion need not rise to the level of probable cause." Id. (internal citation and quotation marks omitted).

Here the facts clearly indicate that the stop was justified by reasonable suspicion from the outset. Subsequent to hearing post-hours shooting in a known hunting locale, the agent testified that he saw a man wearing a camouflage jacket driving a truck at a high rate of

5

speed when the agent's vehicle was behind him. Based on the facts, the agent had reasonable suspicion to stop the truck. After approaching the truck, the agent shined his flashlight into the truck bed and saw the five wood ducks. United States v. Landry, 903 F.2d 334, 337 (5th Cir. 1990) (noting that officer's "use of [a] flashlight to aid his vision did not transform an otherwise valid plain view observation into an illegal search"). As the stop was based on reasonable suspicion, the first and third factors of the plain view test are met.

The second issue, the incriminating nature of the items, is also clearly met. Danley had five wood ducks in the bed of his truck, which is more than the possession limit. All three factors of the plain view test are therefore satisfied.

## **CONCLUSION**

Based on the foregoing reasoning, the magistrate's oral ruling of 8 December 2005 denying the defendants' motion to suppress is AFFIRMED.

Alexandria, Louisiana

26 April 2006

_____
F. A. LITTLE, JR.
UNITED STATES DISTRICT JUDGE